11-1714-cv
Seijas v. Republic of Argentina

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 25th day of October, two thousand twelve.

PRESENT:   REENA RAGGI,
            DENNY CHIN,
            SUSAN L. CARNEY,
                    *Circuit Judges*.

------------------------------------------------------------------------------------

SILVIA SEIJAS, HEATHER M. MUNTON, THOMAS L. PICO ESTRADA, EMILIO ROMANO, RUBEN WEISZMAN, ANIBAL CAMPO, MARIA COPATI, CESAR RAUL CASTRO, HICKORY SECURITIES LTD., ELIZABETH ANDREA AZZA, CLAUDIA FLORENCIA VALLS, RODOLFO VOGELBAUM, EDUARDO PURICELLI, RUBEN DANIEL CHORNY,
                    *Plaintiffs-Appellants*,
                    v.                                             No. 11-1714-cv

REPUBLIC OF ARGENTINA, BANCO DE LA NACIÓN ARGENTINA,
                    *Defendants-Appellees*.

------------------------------------------------------------------------------------

APPEARING FOR APPELLANTS:        CARLOS F. GONZALEZ (Michael Diaz, Jr., Margaret T. Perez, Marta Colomar Garcia, *on the brief*), Diaz Reus & Targ, LLP, Miami, Florida.

APPEARING FOR APPELLEES: CARMINE D. BOCCUZZI, JR. (Jonathan I. Blackman, Christopher P. Moore, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, New York, *for* Republic of Argentina.

MARK S. SULLIVAN (Mario Diaz-Cruz, III, Laura M. Lestrade, *on the brief*), Dorsey & Whitney LLP, New York, New York, *for* Banco De La Nación Argentina.

Appeal from a judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 29, 2011 is AFFIRMED.

Plaintiffs appeal from an award of summary judgment to defendants, the Republic of Argentina ("Argentina") and Banco de la Nación Argentina ("BNA"), on their claim for a declaration that BNA was Argentina's alter ego and, therefore, that BNA's assets could satisfy the judgment that plaintiffs obtained against Argentina relating to the country's default on its sovereign debt. See generally Seijas v. Republic of Argentina, 606 F.3d 53, 56–59 (2d Cir. 2010) (affirming certification of plaintiff class and identifying that "[n]o significant questions existed concerning [Argentina's] liability" relating to its default, but remanding for recalculation of damage awards). Plaintiffs contend that the district court erred in (1) denying their requests for leave to conduct discovery to establish jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") and to oppose summary judgment, and (2) awarding summary judgment to defendants.

We review the denial of a discovery request for abuse of discretion, whether it pertains to jurisdiction, see In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 79 (2d Cir. 2008), abrogated on other grounds by Samantar v. Yousuf, 130 S. Ct. 2278 (2010), or arises under Fed. R. Civ. P. 56(d), Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003). We will identify such abuse only if the district court committed legal error, clearly erred in its findings of facts, or otherwise reached a decision that cannot be located within the range of permissible outcomes. See In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 68–69 (2d Cir. 2003). We review an award of summary judgment de novo, construing the evidence in the light most favorable to the non-moving parties and drawing all reasonable inferences in their favor. See Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Leave To Conduct Discovery

Because BNA, a commercial bank wholly owned by Argentina, qualifies as an "agency or instrumentality of a foreign state," 28 U.S.C. § 1603(b), this court lacks subject matter jurisdiction to adjudicate plaintiffs' claim unless they demonstrate that an exception to the FSIA applies, see id. §§ 1604–05; Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp., 204 F.3d 384, 388 (2d Cir. 2000). Plaintiffs maintain that BNA is not an agency or instrumentality of Argentina, but is instead that sovereign's alter ego, carrying out the country's commercial activities. See 28 U.S.C. § 1605(a)(2). Specifically, plaintiffs

3

contend that BNA "is so extensively controlled by [Argentina] that a relationship of principal and agent is created." First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 629 (1983) ("Bancec").[1] The district court did not afford plaintiffs discovery to pursue these contentions, stating that, on the basis of defendants' evidence in support of summary judgment, there was "sufficient information . . . before the court for the summary judgment motions to be dealt with fairly." Seijas v. Republic of Argentina, No. 10-Civ.-4300(TPG), 2011 WL 1137942, at *1 (S.D.N.Y. Mar. 28, 2011). Plaintiffs complain that this constituted an abuse of discretion. We disagree.

In denying plaintiffs jurisdictional discovery, the district court correctly recognized the "comity concerns implicated by allowing jurisdictional discovery from a foreign sovereign," and soundly concluded that plaintiffs would first have to show "a reasonable basis for assuming jurisdiction." First City, Tex.-Hous., N.A. v. Rafidain Bank, 150 F.3d 172, 176 (2d Cir. 1998); see also In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d at 96 (affirming denial of jurisdictional discovery where plaintiffs failed to establish prima facie case that instrumentality was government's alter ego). Here, plaintiffs' burden was to

---

[1] The district court rejected plaintiffs' argument that recognizing BNA's separate legal status would result in "fraud or injustice." Bancec, 462 U.S. at 629 (internal quotation marks omitted). Plaintiffs do not challenge this determination on appeal, and we therefore deem it abandoned. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998). Similarly, we do not review the district court's grant of summary judgment on plaintiffs' claim that Argentina waived its immunity as to BNA, see 28 U.S.C. § 1605(a)(1), which plaintiffs do not contest on appeal.

4

demonstrate a reasonable basis for not according BNA the presumption of separate legal identity from Argentina. See First City, Tex.-Hous., N.A. v. Rafidain Bank, 150 F.3d at 176; see also De Letelier v. Republic of Chile, 748 F.2d 790, 795 (2d Cir. 1984) (observing that plaintiff's burden is to show "abuse of corporate form" sufficient to overcome presumption of separate legal personality, which "Bancec and the FSIA legislative history caution against too easily overcoming").

In support of their contention that BNA was Argentina's alter ego, plaintiffs point to the following allegations, which the district court accepted as true for the purposes of addressing the motion for further discovery and for resolving the motion for summary judgment: (1) Argentina appointed and removed BNA's directors, (2) BNA made favorable loans to individuals and corporations that were in Argentina's political interests, (3) BNA made loans to Argentina in violation of its governing charter, and (4) BNA's financial records were not transparent. Even accepted as true, however, these allegations are insufficient to establish the extensive control necessary to sustain an alter ego claim or even to establish a reasonable basis for assuming jurisdiction.

The appointment of BNA's directors evidences, at most, that Argentina exercised its powers as BNA's sole shareholder. In Bancec, the Supreme Court held that an instrumentality's management is usually selected by the government according to the instrumentality's enabling statute, and that this lawful control of the board's membership does not render the instrumentality an alter ego of the state. See 462 U.S. at 624; see also

5

Transamerica Leasing, Inc. v. La Republica de Venezuela, 200 F.3d 843, 849 (D.C. Cir. 2000) ("If majority stock ownership and appointment of the directors were sufficient, then the presumption of separateness announced in Bancec would be an illusion."); LNC Invs., Inc. v. Republic of Nicaragua, 115 F. Supp. 2d 358, 365–66 (S.D.N.Y.) (observing that state's majority control of corporation and appointment of directors was "typical [of] government instrumentality"), aff'd, 228 F.3d 423 (2d Cir. 2000). No different conclusion is warranted by plaintiffs' conclusory assertions that several of BNA's directors resigned after being "strong-armed" by Argentina. Appellants' Br. 21. Plaintiffs do not allege that BNA's directors were in fact terminated by Argentina, which would have been inconsistent with BNA's charter and the independence it affords BNA's board. Further, even if Argentina took an active role in overseeing the membership of BNA's board—as it was entitled to do as BNA's sole shareholder—we agree with the district court that this, by itself, does not evidence the "extensive control" of BNA's day-to-day activities, Bancec, 462 U.S. at 629, or "abuse of corporate form," De Letelier v. Republic of Chile, 748 F.2d at 795, necessary to demonstrate a reasonable basis for concluding that BNA was Argentina's alter ego, see Seijas v. Republic of Argentina, 2011 WL 1137942, at *6, *11–12.

Similarly, BNA's loans to Argentina and to individuals and corporations in accordance with Argentina's policy preferences are not inconsistent with BNA's status as an agency or instrumentality. Under Argentinian law and BNA's charter, BNA may lend to Argentina, provided that its loans are limited to financing Argentina's capital expenditures,

6

do not exceed 30% of the bank's deposits from the "non-financial public sector," and are subject to special guarantees of automatic reimbursement in the event of Argentina's default. BNA Br. 18; App. 161–62. Plaintiffs do not contend that BNA failed to abide by these rules. Moreover, BNA's charter explicitly sets forth that BNA "shall coordinate its action with the economic-financial policies established by the national government," App. 82, and that the bank is obligated to offer loans consistent with Argentina's national policy. BNA's lending to Argentina and to other borrowers therefore reflects the actions of an independent instrumentality serving as a vehicle for the government "to obtain the financial resources needed to make large-scale national investments," Bancec, 462 U.S. at 625; it does not demonstrate that BNA was an alter ego of Argentina for the state's commercial activities.

Finally, the purported obscurity of BNA's financial records does not warrant piercing BNA's corporate veil. By itself, the character of BNA's financial accounting is simply too speculative a basis to overcome the strong presumption of the bank's separate legal identity. See De Letelier v. Republic of Chile, 748 F.2d at 795.

Because plaintiffs failed to show a reasonable basis for the court to assume jurisdiction, the district court acted within its discretion in denying their motions to conduct jurisdictional discovery.

2.    Summary Judgment

We further conclude that defendants were entitled to summary judgment on plaintiffs' alter ego claim. Even when the evidence is viewed in the light most favorable to plaintiffs,

7

no genuine dispute arises as to Argentina's extensive control of BNA's operations or abuse of BNA's corporate form.

The facts adduced here fall far short of those alleged in <u>Kensington Int'l Ltd. v. Republic of Congo</u>, No. 03-Civ.-4578(LAP), 2007 WL 1032269 (S.D.N.Y. Mar. 30, 2007), the decision on which Argentina principally relies and which, although not controlling, provides a helpful counter-example to this case. In <u>Kensington</u>, the plaintiffs were able to allege a number of facts indicating the Republic of Congo's extensive control over its instrumentality, an oil company, including that: (1) the instrumentality's corporate structure was designed to allow Congo to engage in "unnecessarily complex transactions and charades for the purpose of confounding its creditors," <u>id.</u> at *9; (2) its president was a state employee, <u>see</u> <u>id.</u>; (3) it never exercised its right to collect a percentage on transactions relating to Congo's oil, but passed on all proceeds to the state, <u>see</u> <u>id.</u> at *10; (4) its accounting records did not reveal significant commercial activity, <u>see</u> <u>id.</u>; (5) Congo commingled state and instrumentality assets, <u>see</u> <u>id.</u>; and (6) the instrumentality refused to disclose records in the course of an audit by the International Monetary Fund and World Bank, <u>see</u> <u>id.</u> at *12. Facts like these, which suggest governmental abuse of the instrumentality's corporate form, are absent from this record. Rather, when taken in the light most favorable to plaintiffs, the evidence shows only that Argentina exercised its rights as sole shareholder to appoint BNA's directors, BNA's lending activity was consistent with Argentinian law and its charter, and BNA arguably could have been more transparent in its accounting practices. Plaintiffs are

therefore wrong that the facts adduced here "go beyond" the degree of state control identified by the <u>Kensington</u> court. Appellants' Br. 25. Accordingly, we agree with the district court that defendants were entitled to summary judgment.

3. <u>Conclusion</u>

We have considered plaintiffs' remaining arguments and conclude that they are without merit. The judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

9